# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA S. BARNES,<br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of<br>Social Security,<br>    Defendant. | )<br>)<br>)<br>)   CIVIL ACTION NO. 17-CV-201-N<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Cynthia S. Barnes brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* Upon consideration of the parties' briefs (Docs. 14, 15) and those portions of the administrative record (Doc. 13) (hereinafter cited as "(Tr. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument held December 7, 2017, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[1]

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 19).

1

## I. *Background*

On May 13, 2014, Barnes filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA"), alleging disability beginning May 4, 2012.[2] After her applications were initially denied, Barnes requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. A hearing was held January 25, 2016, and on June 3, 2016, the ALJ issued an unfavorable decision on Barnes' applications, finding her "not disabled" under the Social Security Act and thus not entitled to benefits. (*See* Tr. 12-37).

On April 6, 2017, the Commissioner's decision on Barnes' applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied Barnes' request for review of the ALJ's decision. (Tr. 1 – 6). Barnes subsequently filed this action under § 405(g) for judicial review of the Commissioner's final decision. *See* (Doc. 1); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a

---

[2] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

3

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper

---

[3] Nevertheless, " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

4

standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo*

5

the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established

that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

### III. *Analysis*

At Step One, the ALJ determined that Barnes met the applicable status requirements through December 31, 2015, and that she had not engaged in substantial gainful activity since the alleged disability onset date, May 4, 2012. (Tr. 14). At Step Two, the ALJ determined that Barnes had the following severe impairments: fibromyalgia, obesity, osteoarthritis/degenerative joint disease of the

knee, carpal tunnel syndrome, diabetes mellitus, degenerative disc disease, and peripheral neuropathy. (Tr. At 15). At Step Three, the ALJ found that Barnes did not have an impairment or combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments. (Tr. 23-24).

> At Step Four,
>
> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Barnes had the RFC "to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)[,[6]]" subject to the following limitations: "…[T]he Claimant can stand for one hour at a time, or six hours total in an eight hour workday; the Claimant can walk for one hour at a time, or six hours total in an eight-hour workday; the Claimant can never climb ladders, ropes, or scaffolds; the Claimant can occasionally climb ramps or stairs; the Claimant can occasionally balance, stoop, and crouch; the Claimant can never kneel or crawl; the Claimant can never push and/or pull foot controls; the Claimant can frequently reach, handle, and finger; the Claimant can frequently push and/or pull with her upper extremities; and the Claimant can tolerate no exposure to unprotected heights or hazardous machinery." (Tr. at 24-34). Based on this RFC, the ALJ determined that Barnes was capable of performing past relevant work as an accounts receivable clerk and office manager. (Tr. at 34-36).

Barnes' lone claim is that the ALJ's finding in her RFC evaluation that Barnes can perform light work is not supported by substantial evidence. A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, *i.e.*, those which are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. *Id.* at *3. The ALJ is exclusively responsible for determining an individual's RFC. 20 C.F.R. § 404.1546(c).

Barnes makes three arguments in support of her position that the ALJ's RFC determination was not based on substantial evidence. First, Barnes argues that ALJ incorrectly identified inconsistences in Dr. Fontana's opinions. Second, Barnes argues that her hearing testimony was inaccurately depicted with regard to her activities and limitations. Third, Barnes contends that the ALJ cherry picked Barnes' limitations. The undersigned addresses each argument below.

### A. ALJ's Evaluation of Dr. Fontana's Opinion

In determining Barnes' RFC, the ALJ considered the medical opinions and records of a number of treating and/or examining physicians. Barnes' arguments focus on the evaluation of Dr. Fontana's opinion. The ALJ explained:

11

The undersigned has assigned partial evidentiary weight to the findings, conclusions, and opinions of the examining orthopedic surgeon, Dr. Andre J. Fontana, as set out in his narrative report and in the MSS[7] in Exhibit 14F. The undersigned has relied upon and given great weight to Dr. Fontana's opinion in the January 20, 2016 MSS to the extent they are consistent with his own physical examination findings for the claimant and with the other objective medical evidence of record. For example, Dr. Fontana's opinions regarding the claimant's abilities to lift, carry, sit, stand, and walk are consistent with and supported by his clinical examining findings of limited range of motion in the lumbar spine, decreased sensation in the bottom of the feet, and some popping and swelling in the right knee, but are also supported by his clinical exam findings of good range of motion in the joints of the upper extremities, and good range of motion in the joints of the lower extremities, as well as being consistent with the objected diagnostic imaging showing only mild degenerative disc disease. Dr. Fontana's opinion that the claimant does not require the use of a cane to ambulate is given great weight because it is consistent with and supported by the objective medical evidence of record.

However, the undersigned must give Dr. Fontana's opinion in the MSS regarding the claimant's postural and manipulative limitations lesser weight because they are not consistent with or supported by his clinical examination findings, with the other objective medical evidence of record, or with the evidence of the claimant's activities of daily living. For example, although Dr. Fontana's physical examination of the claimant revealed that her grip strength was intact, he limited her to no more than occasional handling, fingering, and feeling. This limitation is not consistent with Dr. Brooks' exam findings in August 2014, and is excessive when compared to Dr. Fontana's own exam findings indicating grip and sensory were intact in her hands and that she had good range of motion in her fingers, wrists, elbows, and shoulders. Additionally, Dr. Fontana noted that EMG[8] and nerve conduction studies of the claimant's upper extremities noted only mild carpal tunnel syndrome in the right wrist and that the claimant had only complained of bilateral hand numbness for one month. Dr. Fontana also limited the claimant to occasional reaching and occasional pushing/pulling with her hands, but he noted on physical examination of the claimant that she had good range of motion in the fingers, wrists, elbows, and shoulders. Additionally, lesser weight has been given to Dr. Fontana's opinions regarding the claimant's postural activities because his opinions are internally inconsistent. Dr. Fontana

---

[7] "MSS" is an acronym for Medical Source Statement.
[8] "EMG" is a reference to electromyography.

12

opined that the claimant could stand and walk for six hours each during an eight-hour workday, which is consistent with and supported by the clinical examination findings and the results of objective diagnostic imaging. However, Dr. Fontana also opined that the claimant could never balance, which is inconsistent with his findings regarding the claimant's abilities to stand and walk for prolonged periods of time. Balance is an intrinsic part of standing and walking. To say that one can stand and walk but can never balance is wholly inconsistent. Dr. Fontana's opinions that the [Barnes] can never climb stairs and ramps and never balance, stoop, and crouch is inconsistent with x-rays showing only mild degenerative disc disease and with his own objective exam findings of good range of motion of both hips, both knees, both ankles, and feet. Moreover, the limitations are generally inconsistent with his opinion that the claimant can do all the activities listed on page 7 of the MSS. The postural and manipulative limitations Dr. Fontana assigned the claimant are also excessive compared to his report of the claimant's activities of daily living. For example, in his narrative report, Dr. Fontana noted that the claimant cooked and drove daily, that she cleaned '3/7 days,' and that she walked one block daily.

(Doc. 13 at 32).

Barnes contends that the inconsistencies identified by the ALJ are not inconsistencies, and points to evidence in the record that would support an alternate conclusion. (Doc. 13 at 6). Specifically, Barnes argues:

> The Administrative Law Judge stated that Dr. Fontana's opinion that the Plaintiff can never balance, stoop, and crouch is inconsistent with mild x-rays and with his own objective exam findings. Tr. at 29. However, in his physical examination report, Dr. Fontana stated that the Plaintiff had decreased sensory in the bottom of both feet with poor squatting and popping and swelling of the right knee. This would limit the Plaintiff's ability to balance, stoop, and crouch. Dr. Fontana's determination that the Plaintiff should never balance, stoop, or crouch is not inconsistent with his own examination findings.
>
> Dr. Fontana's findings were also consistent with the medical evidence of record. Plaintiff has received treatment from Victory Health Center since 2010 for left lateral chest wall pain, diabetes mellitus uncontrolled, hypertension, hyperlipidemia, hypothyroidism, sinusitis, neuropathy, chronic pain, fibromyalgia, and sleep apnea. Tr. at 300-

> 377. On June 28, 2012, Dr. Robert Lightfoot completed an application for disability access parking privileges. Tr. at 373. Dr. Lightfoot stated that the Plaintiff was severely limited in her ability to walk due to an arthritis, neurological, or orthopedic condition. Id. On December 14, 2015, Plaintiff's treating physician, Dr. Robert Lightfoot prescribed the Plaintiff a cane and stated the cane was medically necessary due to her diagnoses of diabetes with neuropathy, fibromyalgia, and chronic low back pain. Tr. at 372.
>
> Plaintiff was evaluated in a consultative examination on August 14, 2014 by Dr. James Brooks. Tr. at 291-294. Dr. Brooks noted that the Plaintiff had decreased forward flexion of her spine. Id. Plaintiff had a normal gait but walked with care with a cane. Id. Plaintiff could walk without the cane but walked slowly. Id. Plaintiff could do a partial squat. Id. Plaintiff had decreased sensation in her right lateral thigh, right lateral calf, and bottom of her right foot. Id. Plaintiff's reflexes were 2 out of 4 throughout the examination. Id. Plaintiff was diagnosed with complaints of chronic low back pain with degenerative disc disease, adult onset diabetes mellitus, and incontinence of urine. Id. Dr. Brooks stated that Plaintiff's exam was consistent with radiculopathy from degenerative disc disease. Id. Dr. Brooks opined that the Plaintiff may be a candidate for epidural injection and/or back surgery. Id. Dr. Brooks stated that with the right medical care, Plaintiff could return to work. Id.

(Doc. 14 at 5-6). Barnes' contentions are not persuasive arguments that the ALJ's RFC determination was not supported by substantial evidence. Rather, Barnes has argued that a different determination may have been reached had the ALJ considered the record evidence in an alternative manner.

As quoted above, the ALJ explained why certain weights were attributed to Dr. Fontana's opinions, outlined contradictions, and explained her findings. Though Barnes argues that Dr. Fontana's opinions were consistent, the ALJ articulated reasons why she determined they were not and resolved those inconsistencies. The question before this Court is not whether an alternative determination may be supported by the record, but whether the decision reached was supported by

substantial evidence. *See Ingram*, 496 F.3d at 1260. "'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.'" *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). Even if medical records and opinions, combined with Barnes' testimony may support an alternative determination, there remains substantial evidence within the record on which the ALJ's determination was based. *See Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir.2005) (a reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."). Further, the ALJ specifically articulated the rationale behind his determination. Additionally, to the extent that Barnes disagrees with the ALJ's evaluation of Dr. Brooks' opinion, such disagreement does not persuade the court that the RFC determination lacked substantial evidence. As a result, Barnes' claim of error is without merit.

### B. Description of Barnes' Hearing Testimony and Cherry Picking of Limitations

Barnes contends, "…[The ALJ] used much of the Plaintiff's testimony at the hearing and comments in the disability report regarding her daily activities in an attempt to establish that Plaintiff could perform the physical requirements of light work. However, the evidence does not provide a firm basis that Plaintiff has the ability to perform the requirements of light work. The Administrative Law Judge focused solely on certain comments to make it appear that she was capable of performing much more in the way of physical activity that what the Plaintiff

15

actually testified to during the administrative hearing." (Doc. 14 at 7).

Specifically, Barnes cites the following portion of the ALJ's decision:

> The claimant's ability to frequently handle and finger is consistent with and supported by Dr. Fontana's conclusion that the claimant has only "mild" carpal tunnel syndrome of the right wrist, as well as by the fact that the claimant has reported that she plays computer games online daily (Exhibit 3E) and she completed her own forms (Exhibits 3E, 4E, and 5E) with neat penmanship. (Exhibit 1A). The claimant also reported that she performs volunteer services for a veteran's group by taking phone calls at home, that she does mopping, laundry, and dishes, and that she drives an automobile. These activities suggest adequate functional use of her hands.

(Doc. 13 at 33, Tr. 29). Upon review of this portion of the decision, though perhaps a citation is missing, it does not appear the ALJ was referencing Barnes' hearing testimony. Rather, the ALJ appears to be addressing Exhibits 1A, 3E, 4E, and 5E, which are forms completed by Barnes, including a function report, two fatigue questionnaires, and correspondence from Barnes.

At the hearing, Barnes reported that she had stopped completely, modified her performance of, or needed more assistance or breaks during these activities. Tr. at 56-58. For example, the ALJ noted that Barnes "testified that she now mops her floor from a seated position on her walker, but that she was able to mop her floor while standing on her feet until about four or five months prior to the hearing. [Barnes] also testified that she was the executive director of the veterans group until a little over one year ago and that, as executive director, she had an office and would go in one day a month to provide assistance. She further testified that she was still going out into the field to assist homeless veterans and working in coordination with law enforcement to increase awareness of veterans' specific needs

until a year and a half ago. She stated that she provided eight hours of volunteer service the month prior to the hearing." (Doc. 13 at 37, Tr. at 33).

Again, it is not this Court's task to re-weigh the evidence. While the ALJ took Barnes' testimony into consideration, this was not the only evidence upon which she made her RFC determination. Barnes' testimony may be open to interpretation, but it is not for this Court to interpret that testimony in a different manner.

### C. "Cherry picking" of Limitations

Barnes' argument that the ALJ "cherry picked" Barnes' limitations is another attempt to have this Court improperly re-weigh the evidence. Social Security Ruling 96-8p requires that the ALJ include in her RFC assessment "a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ wrote a thorough opinion, explained her reasoning, provided justification for why certain evidence was relied upon, and resolved the conflicts in the evidence.

Barnes has failed to identify medical opinions, records, or testimony that the ALJ failed to consider. Rather, Barnes contends that the ALJ's view of the evidence before her and resolution of the conflicts within that evidence was incorrect. As the Court found with regard to Barnes' first argument, Even if medical records and opinions, combined with Barnes' testimony may support an alternative determination, there remains substantial evidence within the record on which the ALJ's determination was based. *See Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th

Cir. 2005) (a reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner.").

Upon consideration, the Court finds that the assessment made by the ALJ was supported by substantial evidence. Accordingly, the Court **OVERRULES** Barnes' lone claim of reversible error and finds that the Commissioner's final decision denying her benefits is due to be **AFFIRMED**.

### IV. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued June 3, 2016, denying Barnes' applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 8th day of January 2018.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**